**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOSHUA KENNETH TURNER,**

      **Plaintiff,**

                              **Case No. 2:19-cv-2376**

      **vs.**                            **Judge Michael H. Watson**

                                **Chief Magistrate Judge Elizabeth P. Deavers**

**OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION,** *et al.*,

      **Defendants.**

**<u>ORDER AND REPORT AND RECOMMENDATION</u>**

Plaintiff, Joshua Kenneth Turner, an Ohio inmate who is proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against remaining Defendants Mike Davis, Ph.D., Religious Services Administrator for the Ohio Department of Rehabilitation and Corrections and Chaplain Thomas Kehr, for alleged violations of his rights under the Free Exercise Clause of the First Amendment and RLUIPA.  This matter is before the United States Magistrate Judge for consideration of Plaintiff's Motion for Preliminary Injunction (ECF No. 68), Defendants' Response (ECF No. 71), and Plaintiff's Reply Memorandum (ECF No. 74).  For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction be **DENIED**.

**II.**

Plaintiff, currently incarcerated at the Southern Ohio Correctional Facility ("SOCF"), alleges that he has been denied kosher meals and has moved for a preliminary injunction seeking Defendants' compliance with ODRC policy regarding such meals.  Plaintiff explains that the cost

of kosher meals has a "*de minimis*" impact on the ODRC's budget and that "the full perpose for this motion is to exhaust for future Jewish inmate's, that the District courts saves tax payers and positive citizens of the United States time and money."  (ECF No. 68 at p. 3; *see also* ECF No. 74 at p. 3.)  The Court understands that Plaintiff seeks an injunction allowing him "to be served kosher meals while [his] case in the District courts be recomended to a trial or expection of [his] case, expection of Judge's signed to my case."  (ECF No.  68, at p.3.)  Defendants oppose Plaintiff's request (ECF No. 71).  This matter is now ripe for resolution.

### III.

Federal Rule of Civil Procedure 65 permits a party to seek injunctive relief when the party believes it will suffer immediate and irreparable injury, loss, or damage.  Fed. R. Civ. P. 65(a) and (b).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also PGP, LLC v. TPII, LLC*, No. 17-6221, 2018 WL 2446702, at *3 (6th Cir. May 31, 2018) (quoting *Camenisch*, 451 U.S. at 395)).

A district court considering the extraordinary remedy of a preliminary injunction must consider and balance the following four factors:

(1) whether the movant has shown a strong likelihood of success on the merits;
(2)  whether the movant will suffer irreparable harm if the injunction is not issued;
(3) whether the issuance of the injunction would cause substantial harm to others; and
(4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)); *see also PGP, LLC*, 2018 WL 2446702, at *2 (same).  "These factors are not prerequisites but are factors that are to be balanced against each other."  *Overstreet*, 305 F.3d at 573.  However, "[a]lthough the four factors must be

balanced, the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."  *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir. 2002) (citations omitted); *see also Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("Several of the circuits which have recognized the 'balance of hardships' test have now made it clear that the plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue.").  Notably, the United States Court of Appeals for the Sixth Circuit has "never held that a preliminary injunction may be granted without any showing that the plaintiff would suffer irreparable injury without such relief."  *Friendship Materials, Inc.*, 679 F.2d at 103.

A movant's burden is even more difficult to satisfy where, as here, a prison inmate seeks an injunction to obtain affirmative relief beyond maintenance of the status quo.  *See* 18 U.S.C. § 3626(a)(2) ("In any civil action with respect to prison conditions . . . [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."); *Camenisch*, 451 U.S. at 395.

### III.

#### A.  Likelihood of Success on the Merits

As noted, Plaintiff's initial burden here is demonstrating that he has a strong likelihood of success on the merits of his claims.  Plaintiff's claims are evaluated under the following legal standards.

#### 1.  First Amendment Free Exercise Claim

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting

the free exercise thereof . . . ."  U.S. Const. amend. I.  "Prisoners retain the First Amendment right to the free exercise of their religion."  *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011).  "Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held."  *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted).  The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs.  *Id.*  "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted).  Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action "is valid if it is 'reasonably related to legitimate penological interests.'"  *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

<u>Sincerely Held Belief</u>

In order to succeed on his free exercise claim, Plaintiff must show that his beliefs "are sincerely held and whether they are, in his own scheme of things, religious."  *United States v. Seeger*, 380 U.S. 163, 185 (1965); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citing *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir.1987) ("A prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held.").  As the Sixth Circuit has recognized, "[p]rison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in

4

maintaining discipline within the prison." *See Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009).

Reasonableness

Assuming a sincerely held belief, the Court must then consider whether Defendants' actions were reasonable. In *Turner v. Safley*, the United States Supreme Court held that four factors are relevant in balancing the deference owed to prison policies designed to maintain security and discipline with the important need to protect inmates' constitutional rights. 482 U.S. 78, 85-89 (1987). The four factors are as follows:

(1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest;

(2) whether alternative means are open to inmates to exercise the asserted right;

(3) what impact an accommodation of the right would have on guards and inmates and prison resources; and

(4) whether there are "ready alternatives" to the regulation.

*Id.* at 89–91. If the first factor is not present, the regulation is unconstitutional, and the other factors do not matter. *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994). The remaining factors are considerations that must be balanced together. *Spies*, 173 F.3d at 403 (quoting *Turner*, 482 U.S. at 90–91).

The Sixth Circuit Court of Appeals has held that "[p]rison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison." *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009) (holding that defendant reasonably removed plaintiff from the kosher meal program because plaintiff "ordered," "signed for," and "held [in] his lap" non-kosher food items) (citing *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (concluding that, in light of a prisoner's

5

"obvious actions in not observing the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility)).

2. **RLUIPA Claim**

Under RLUIPA, a government may not impose a "substantial burden on the religious exercise" of an inmate, unless the government demonstrates that imposition of such burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a). The purpose of RLUIPA is to "protect[] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent upon the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). In determining whether a practice is the "least restrictive means" of furthering a compelling government interest related to the incarceration of prisoners, a court must give due deference to the judgment of prison officials as to the safety concerns implicated by prison regulations. *Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005). RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722.

The phrase "substantial burden" is not defined in the statute. Nevertheless, courts have held that it must be an "exceptional" burden. *Id.* at 720; *see Livingston Christian Schs. v. Genoa Charter Twp.,* 858 F.3d 996, 1003 (6th Cir. 2017) (explaining that "not just any imposition on religious exercise will constitute a violation of RLUIPA" and that instead, "a burden must have some degree of severity to be considered 'substantial.'"); *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x. 729, 736 (6th Cir. 2007) ("[A] 'substantial burden' [under the RLUIPA] is a difficult threshold to cross").

3. **Plaintiff's Likelihood of Success**

In his Motion, Plaintiff reiterates the allegations of his Complaint that he is entitled to kosher meals because he practices Reconstruction Judaism. With respect to the above elements of his claims, Plaintiff at most suggests that budgetary concerns are not a legitimate penological interest as they relate to his request for kosher meals. Given this state of the record, the Court cannot conclude that Plaintiff has a strong likelihood of success on the merits of either of his claims. Moreover, in response to Plaintiff's motion for summary judgment, Defendant Davis averred by affidavit that Reconstruction Judaism, Plaintiff's stated religious affiliation, does not require that adherents keep kosher. *See* Affidavit of Mike Davis, ECF No. 60-1, at ¶ 10. Plaintiff has provided no evidence to the contrary.[1] Absent a more well-developed record on this issue, the Court has no basis upon which to conclude that Plaintiff has met his burden of demonstrating a strong likelihood of success on the merits of his claims. Accordingly, this factor does not weigh in favor of injunctive relief.

B. **Remaining Factors**

Similarly, none of the other factors weigh in favor of injunctive relief here. For example, Plaintiff has failed to demonstrate that he will suffer irreparable harm in the absence of his requested injunctive relief. In fact, Plaintiff does not even frame his request for injunctive relief in terms of harm that he is suffering. Instead, he suggests that his purpose in moving for such relief is for the benefit of future Jewish inmates. Moreover, as Defendants correctly note,

---

[1] The Court notes that, subsequent to filing his motion for injunctive relief, Plaintiff submitted a filing captioned as a "Motion of Declaration, under Penalty of Perjury." (ECF No. 72.) This filing includes multiple exhibits, including copies of ODRC religious policies and kites which Plaintiff suggests indicate that he has been recognized as Jewish. It is not entirely clear to the Court whether Plaintiff intends this filing to be considered in support of his request for injunctive relief. Regardless, even if this were Plaintiff's intention, these documents, standing alone, do not serve to establish Plaintiff's strong likelihood of success on the merits.

"'[d]elay in pursuing relief undercuts claims of irreparable harm and may be considered as circumstantial evidence that the potential harm to plaintiff is not irreparable or as great as claimed.'" *Burton v. Kettering Adventist Health Care*, No. 3:20-CV-209, 2020 WL 3265526 (S.D. Ohio June 17, 2020) (quoting *Fenje v. Feld*, No. 01 C 9684, 2002 WL 1160158, at *2, 2002 U.S. Dist. LEXIS 9492 (N.D. Ill. May 28, 2002)); *see also Kendall Holdings*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) ("[t]he length of time that a party takes to file suit or request injunctive relief is also relevant to the irreparable harm inquiry.  A delay between the discovery of the allegedly infringing conduct and the request for injunctive relief can support an inference that the alleged harm is not sufficiently severe or irreparable to justify injunctive relief.") (internal citation omitted).  Plaintiff initially submitted his Complaint in this action on May 30, 2019.  (ECF No. 1.)  He did not file his current motion seeking injunctive relief until October 29, 2020, seventeen months later.  (ECF No.  68.)  A delay of this length, given the nature of Plaintiff's claims, weighs against the conclusion that any harm to Plaintiff could be considered irreparable.[2]

Finally, when a motion may impact matters of prison administration, the interests of third parties and the public weigh against granting an injunction.  Interference by federal courts in the administration of state prison matters is "necessarily disruptive."  *Orum v. Michigan Dep't of Corr.,* No. 2:16-CV-00109, 2019 WL 2076996, at *4 (W.D. Mich. Apr. 8, 2019), *report and recommendation adopted*, No. 2:16-CV-109, 2019 WL 2073955 (W.D. Mich. May 10, 2019).

---

[2] Plaintiff explains in his Reply (ECF No. 74) that he did not move for injunctive relief until after Defendant Davis permitted another inmate, an alleged member of the Aryan Brotherhood, to receive kosher meals.  This explanation does not require a different result.  Even assuming this to be true, it does not address the issue of irreparable harm suffered by Plaintiff.

Further, there is no public interest in granting extraordinary relief in the prison context absent a sufficient showing of a violation of constitutional rights. *Id.*

In sum, Plaintiff has failed to demonstrate that he is entitled to injunctive relief. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion seeking injunctive relief.

## IV.

Briefly, the Court will address several additional filings made by Plaintiff. First, the Court does not construe Plaintiff's "Motion for Declaration" (ECF No. 72) as a motion. Rather, it appears to be intended by Plaintiff as a form of evidentiary material. Accordingly, the Clerk is **DIRECTED** to remove it from the Court's pending motions list.

Further, Plaintiff's motion requesting that the Clerk's office provide him with "pre-embossed manilla envelopes" so that he can mail his filings to the Court, (ECF No. 73), is **DENIED.** Plaintiff's request is beyond the dictates of 28 U.S.C. § 1915(a), the code section permitting a court to grant leave to proceed in this Court as a pauper. *See Hurst v. Warden*, No. CIVA 2:09-CV-01042, 2010 WL 1687675, at *1 (S.D. Ohio Apr. 22, 2010).

Finally, the Court notes that Plaintiff has filed a document captioned as "Discovery." (ECF No. 75.) The Court **STRIKES** this filing and **DIRECTS** Plaintiff to cease filing discovery documents until they are used in a proceeding or the Court orders otherwise. *Cf.* Fed. R. Civ. P. 5(d)(1) ("[D]isclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for documents or tangible things or to permit entry onto land, and requests for admission.").

**V.**

For these reasons, the Undersigned concludes that, based on the present record, Plaintiff has not met the high standard for extraordinary injunctive relief. It is therefore **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 68) be **DENIED** in its entirety. Further, the Clerk is **DIRECTED** to remove Plaintiff's Motion of Declaration Under Penalty of Perjury (ECF No. 72) from the Court's pending motions list. Plaintiff's motion for pre-stamped envelopes (ECF No. 73) is **DENIED.** Finally, the Court **STRIKES** Plaintiff's "Discovery" (ECF No. 75).

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**

*/s/ Elizabeth A. Preston Deavers*
DATED:  December 2, 2020      **ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE**