IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


JOSHUA KENNETH TURNER,

    **Plaintiff,**

                                        Civil Action 2:19-cv-02376
                                        Judge Michael H. Watson
    v.                              Magistrate Judge Elizabeth P. Deavers


OHIO DEPARTMENT OF
REHABILITATION AND
CORRECTION, *et al.,*

    **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff, Joshua Kenneth Turner, a state prisoner currently incarcerated in the Southern Ohio Correctional Facility ("SOCF"), proceeding *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1. (ECF No. 7.) Following an initial screening, Plaintiff is proceeding on claims against Defendants Mike Davis and Chaplain Kehr, in their individual capacities, for violations of his rights under the Free Exercise Clause of the First Amendment to the United States Constitution and RLUIPA. This matter is before the Court for consideration of Defendants' Motion for Summary Judgment. (ECF No. 81.) Plaintiff has filed a response and Defendants have filed a reply. (ECF Nos. 82, 83.) For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT**, **in part**, and **DENY**, **in part**, Defendants' Motion for Summary Judgment.

## I. FACTUAL BACKGROUND

The following factual summary, construed in the light most favorable to Plaintiff, is derived from the record as a whole, including the summary judgment briefing, documentary evidence submitted by Defendants in response to Plaintiff's motion for summary judgment, and [1] a "Motion of Declaration Under Penalty of Perjury filed by Plaintiff on November 12, 2020 (ECF No. 72). Plaintiff asserts in his unverified Complaint that he has practiced Reconstruction Judaism his whole life. (ECF No. 7, at 5). When Plaintiff arrived at the Warren Correctional Institution ("WCI") in February 2019 he "put in a kite to Chaplain Kehr for [a] kosher meal accommodation." (*Id.* at 6.) Chaplain Kehr forwarded his request to Defendant Davis. (*Id.*) Defendant Davis denied Plaintiff's request on March 22, 2019, because he was unable to determine that Plaintiff's religious beliefs were sincerely held. (*Id.*) Prior to his arrival at WCI, Plaintiff had been granted this accommodation and had met with a rabbi at other institutions. (*Id.*)

Defendant Davis avers the following by affidavit. He is the Religious Services Administrator for the Ohio Department of Rehabilitation and Correction ("ODRC"). (ECF No. 60-1 at ¶ 2.) As part of his job duties, he is "responsible for overseeing and advising ODRC and its facilities on issues related to religious services offered at ODRC institutions." (*Id.* at ¶ 5.) His position requires him "to have thorough knowledge of religious principles and practices of a significant number of faiths, and be well versed in clinical pastoral education." (*Id.*) He also

---

[1] Plaintiff filed a motion for summary judgment on June 26, 2020. (ECF No. 57.) That motion was denied. (ECF Nos. 62, 63.) Defendants filed the evidentiary materials upon which they rely in support of their motion for summary judgment in response to Plaintiff's motion. (ECF No. 60.)

serves as the final step of appeals for all religious accommodation requests and issued the final decision on Plaintiff's appeal of the denial of his religious accommodations. (*Id*. at ¶ 6.)

In reviewing Plaintiff's religious accommodation request, Defendant Davis noted several grounds for denial. (ECF No. 60-1 at ¶ 8.) These grounds included the following. Plaintiff failed to attach to his accommodation request a letter or other supporting evidence from his rabbi as would be customary. (*Id.* at ¶ 8a.) When interviewing Plaintiff, Chaplain Kehr noted Plaintiff's failure to articulate an understanding of Orthodox or Reconstruction Judaism. (*Id*. at ¶ 8b.) Plaintiff was a noted security threat group member and has a number of tattoos, which are not permitted in the practice of Orthodox Judaism. (*Id*. at ¶¶ 8c, 8d.) Contrary to Plaintiff's representation, there was no record of Plaintiff having received kosher meals during his previous incarceration. (*Id.* at 8e.) Plaintiff had not requested kosher meals while he had been registered as an adherent to Orthodox Judaism, which, in contrast to Reconstruction Judaism, does require its adherents to keep kosher. (*Id*. at ¶¶ 8f, 9.) Also, during Plaintiff's time as a registered adherent to Orthodox Judaism, Plaintiff had not requested a yarmulke or a Torah. (*Id*. at ¶9.) In 2019, Plaintiff changed his religious affiliation from Orthodox Judaism to Reconstruction Judaism. (*Id*. at ¶ 10.) Reconstruction Judaism does not require that its adherents keep kosher and keeping kosher is not a central tenet to the practice of the faith. (*Id.*) As a result, the denial of kosher foods does not inhibit or infringe upon the ability to practice the faith. (*Id.*) Legitimate budgetary, safety, security and health concerns supported the decision to deny Plaintiff's kosher meal request. (*Id.* at ¶ 11.) Alternative options were available to Plaintiff including vegetarian meal offerings and the availability of kosher foods for purchase in the commissary. (*Id.* at ¶ 12.) In Defendant Kehr's professional opinion, Plaintiff was not sincere in his request for a religious accommodation. (*Id*. at ¶ 13.)

Defendant Davis supported his affidavit with Plaintiff's religion file as kept by ODRC in the ordinary course. (ECF Nos. 60-1 at ¶ 4, 60-2.) These records reveal the following.

Plaintiff's Lebanon Correctional Institution Religious Services Intake Form indicates that on April 20, 2017, Plaintiff registered as Jewish (Orthodox). (ECF No. 60-2, at 12.) On February 28, 2019, Plaintiff completed a Request for Religious Accommodation at Warren Correctional Institution stating that he belonged to the Jewish religion, requesting a "Tora," yarmulke, and kosher meals, describing the basis for his request as "practicing, reading Judah Tradation," and indicating that "Rabi Mindy" was the religious leader who could verify his request. (*Id.* at 10.) Plaintiff also completed a questionnaire in support of his accommodation request describing his faith and its impact on his life, explaining why he considered the accommodation necessary, and the length of time he had practiced his faith. (*Id*. at 9.)

On March 3, 2019, Defendant Kehr completed a Response to Request for Religious Accommodation, recommending as follows:

> Inmate Turner is listed as Jewish his request to purchase scriptures and yarmulke (white or tan) is appropriate RE Kosher In two of his previous numbers Inmate Turner did not register as Jewish During my interview with him he did not identify any deeper Jewish practices demonstrate any knowledge of Reconstruction or Orthodox Judaism (his listed preference when at LeCI on a previous number) He was not at the time approved for Kosher meals His current rationale for Kosher meals did not demonstrate sufficient justification.

(ECF No. 60-2, at 7.) The document further reflects that Plaintiff's request was referred to the Religious Service Administration for approval of kosher meals. (*Id*.) By decision dated March 22, 2019, Defendant Davis denied Plaintiff's request stating that he was "unable to make a determination, if the request reflects a strongly held religious belief." (*Id* at 6.)

On May 15, 2019, Defendant Kehr completed a Conduct Report stating that:

> During the past several weeks while I round in TPU Inmate Turner has been screaming, yelling profanities, threatening and banging on his cell door. Turner

blames me for a decision by Columbus NOT APPROVING Kosher meals. Yesterday as in the past several weeks he continued his rant against me but this time he threatened me with a broom he was using to clean his cell. His cuff port was open for him to give the broom and dust pan back to the Officer. He swung the broom out of the port saying "I am going to smack you in the face." He proceeded to yell profanities and bang loudly on his door inciting other TPU inmates to join in a loud banging up rise disturbing peace in the block.

(ECF No. 60-2, at 1.)

Sometime prior to July 2, 2019, Plaintiff was transferred to SOCF. (ECF No. 10.) Plaintiff's "motion of declaration under penalty of perjury" filed on November 12, 2020, states that both Chaplain Kehr at WCI and Chaplain Ruckle from SOCF recognize that he is Jewish and observes all of the holidays. (ECF No. 72.) Plaintiff attaches several documents to this motion, including a copy of the ODRC policy relating to Religious Accommodations and Jewish Religious Services. (ECF No. 72-1, at 1-7; 8-11.) He also has submitted a copy of the religious service intake form that he completed at SOCF listing his religious choice as Jewish (Reconstruction). (ECF No. 72-1, at 13.) Finally, Plaintiff submitted copies of several kites and responses. (*Id.* at 14-27.) Many of them lack dates. However, under penalty of perjury, Plaintiff states that Exhibits E, F, and G (*Id.* at 14-18) are "kites from Chaplain Kehr" (ECF No. 72, at 2.) Further, he states that Exhibits H, I, J, and K (ECF No. 72-1, at 20-27) are kites from Chaplain Ruckel at SOCF. (ECF No. 72, at 2.)

On April 22, 2021, Plaintiff filed a "Motion for a settlement from Defendants." (ECF No. 86.) According to that motion, in March 2021, Plaintiff filed another request for a religious accommodation requesting kosher meals. (*Id*.) That request was approved. Plaintiff has attached to his motion a copy of a Decision of the Religious Services Administrator, dated March 24, 2021, indicating approval of his request for a kosher meal. (*Id.*) The document is not signed by Defendant Davis but states that his signature is "on file." (*Id*.)

In his complaint, Plaintiff seeks $25,000,000 for his pain, anguish, and humiliation, and to be allowed his kosher food accommodation.  (ECF No. 7, at 8.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001)); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,' ... there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light

most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

Defendants have moved for summary judgment on both Plaintiff's First Amendment and RLUIPA claims. (*See generally* ECF No. 81.)  Also, despite the clarity with which the Court defined Plaintiff's claims in connection with the initial screening of the Complaint (*see* ECF Nos. 11 and 20), Defendants have construed Plaintiff's complaint as asserting a claim that he was denied the right to grieve and moved for summary judgment on it as well.   (ECF No. 81 at 3.)  Because the Court's construction of Plaintiff's claims is clear and has not been challenged by Plaintiff, it will not address this latter issue.  The Court considers the other issues in turn.

### A.  The RLUIPA Claim

Section 3 of RLUIPA provides in pertinent part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). The threshold inquiry, however, is "whether the challenged governmental action substantially burdens the exercise of religion." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007); *see also Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010). RLUIPA does not provide a cause of action against defendants in their individual capacities.

*Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010). RLUIPA permits "appropriate relief against a government," but the Sixth Circuit has held that such relief does not extend to monetary damages. *Cardinal v. Matrish*, 564 F.3d 794, 801 (6th Cir. 2009); *see also Nelson v. Jackson*, 2014 WL 197877 (S.D. Ohio Jan. 15, 2014).

In the *Cardinal* case, the plaintiff inmate sued under RLUIPA because the prison failed to provide him with kosher food, but he was later transferred to a facility that provided him with kosher meals. The court held that because the inmate had received the relief in the form of kosher meals and was not entitled to monetary damages, his RLUIPA claim was moot. *Cardinal, supra,* 564 F.3d at 798-99. As noted, Plaintiff has filed a "Motion for Settlement" stating that, following his March 2021 request for a religious accommodation, he now has been approved for kosher meals. (ECF No. 86.) Defendants have not challenged Plaintiff's representation and, therefore, it is undisputed that Plaintiff now has been approved for kosher meals. Thus, because monetary damages are not available under RLUIPA, his claim under that statute is now moot pursuant to the holding in *Cardinal*. *See also Ervin v. Davis*, No. 2:16-CV-186, 2017 WL 2573251, at *3 (S.D. Ohio June 14, 2017), *report and recommendation adopted*, No. 2:16-CV-186, 2017 WL 3600447 (S.D. Ohio Aug. 21, 2017);*Willison v. Davis*, No. 2:15-CV-2704, 2016 WL 7117390 (S.D. Ohio Dec. 7, 2016), *report and recommendation adopted,* No. 2:15-CV-2704, 2017 WL 57864 (S.D. Ohio Jan. 3, 2017).

**B. First Amendment Free Exercise Claim**

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011).

"Under § 1983, a prisoner alleging that the actions of prison officials violate his religious beliefs must show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (citation and internal quotation marks omitted). The prisoner must also show that the prison's action substantially burdens his sincerely held religious beliefs. *Id.* "An action of a prison official will be classified as a substantial burden when that action forced an individual to choose between following the precepts of his religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hayes*, 424 F. App'x at 555 (internal quotation marks and citations omitted). Under § 1983, if the action substantially burdens a prisoner's sincerely held beliefs, the action "is valid if it is 'reasonably related to legitimate penological interests.'" *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Defendants move for summary judgment on Plaintiff's First Amendment claim for two reasons: first, they assert that Plaintiff does not have a sincerely held religious belief the central tenet of which requires him to maintain a kosher diet; second, they assert that, even if Plaintiff could demonstrate a sincerely held religious belief, their actions were reasonable under *Turner*.

     *1.  Sincerity*

       Defendants have set forth several reasons for the decision that the sincerity of Plaintiff's belief could not be determined at the time of his 2019 accommodation request made upon his arrival at WCI. None of their asserted reasons can be viewed as dispositive here. For example, Defendants cite Plaintiff's "failure to articulate an understanding of Orthodox or Reconstruction Judaism." (ECF No. 60-1, at ¶ 8b.) "However, the Sixth Circuit has unambiguously held that prisoners cannot be denied kosher meals on grounds that they lack

objective knowledge of Judaism." *Santos v. Chambers-Smith*, No. 2:19-CV-2984, 2020 WL

4434866, at *4 (S.D. Ohio Aug. 3, 2020) (citing *Colvin v. Caruso*, 605 F.3d 282, 297–98 (6th

Cir. 2010)).   Further, Defendants cite Plaintiff's "behavioral issues" as described by Chaplain

Kehr in a conduct report dated May 16, 2019.  (ECF No. 60-1 at ¶ 8c, 60-2, at 1.)  The date of

the conduct report, however, is nearly two months after Defendant Davis issued his decision.

Defendants also note Plaintiff's failure to attach any supporting documentation from Rabbi

Mindy Kalmanson to his religious accommodation request.  However, ODRC policy relating to

religious accommodations appears to require only that inmates provide "names of any religious

leaders needed to verify the request."  (ECF NO. 72-1, at 3.)  Plaintiff identified "Rabi Mindy"

on his questionnaire form submitted with his accommodation request.  (ECF No. 60-2, at 9.)

Further, to the extent Defendants point to Plaintiff's membership in a security threat group or his

tattoos as a basis for questioning his sincerity, they offer only a conclusory statement as to these

factors.  Under this circumstance, the Court finds that Defendants' argument on this point is not

well-developed and declines to consider it.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th

Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived. It is not sufficient for a party to mention a

possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")

Defendants particularly rely, however, on Plaintiff's failure to request kosher meals, a

yarmulke, or a Torah while he was registered as an adherent to Orthodox Judaism during his

incarceration at LeCI.  (ECF No. 81, at 6-7 "…perhaps the most perplexing point is that while

registered as an Orthodox Jew, … Plaintiff never once made a religious accommodation

request.")  To be sure, although Plaintiff states in his unverified Complaint that he received

kosher meals at LeCI, (*see, e.g.,* ECF No. 7, at 5), he has not come forward with any supporting

evidence. Nor has he addressed Defendants' claim that the religious accommodation request at issue here is the first he submitted while incarcerated in an ODRC facility. This failure, however, is not fatal to Plaintiff's claim. This is because Plaintiff's apparent failure to request a religious accommodation during his previous incarceration, standing alone, does not require the conclusion that Plaintiffs' beliefs upon his arrival at WCI were insincere. Notably, Defendants have not explained how Plaintiff's alleged non-adherence to Orthodox Judaism during his incarceration at LeCI, in at least 2017, undermines his request for a religious accommodation upon arrival at WCI in 2019. It is plausible that Plaintiff chose to become more observant in the interim. Based on the current state of the record, Defendants simply have not demonstrated otherwise.

Most significantly, Defendants contend that they are entitled to summary judgment because keeping kosher is not a central tenet of Reconstruction Judaism. However, even assuming this to be true,[2] it is not dispositive. Rather, "[a] purely objective inquiry into whether a particular religious practice is necessary to practicing that religion, or is essential to it, cannot be squared with either RLUIPA or First Amendment jurisprudence." *Ritter v. Davis*, No. 1:18 CV 0826, 2018 WL 4271043, at *2 (N.D. Ohio Aug. 20, 2018), *report and recommendation adopted,* No. 1:18CV826, 2018 WL 4258185 (N.D. Ohio Sept. 6, 2018); *see also Hall v. Martin*, No. 1:10-CV-1221, 2012 WL 1579334, at *9 (W.D. Mich. Mar. 29, 2012), *report and recommendation adopted,* No. 1:10-CV-1221, 2012 WL 1579321 (W.D. Mich. May 3, 2012) ("The federal courts of this country have repeatedly rejected, under both RLUIPA and First

___

[2] *See, e.g., Ritter,* 2018 WL 4271043, at *2 n.34, suggesting that the denial in that case was based, at least in part, "on the improper conclusion that Reform Judaism does not impose a requirement to keep kosher."

Amendment jurisprudence, disapproval of requests for religious accommodation on the ground that the religious accommodation was not compelled by or central to the prisoner's professed religion").

Moreover, "[i]n order to be entitled to accommodation, a person's beliefs need not be 'acceptable, logical, consistent, or comprehensible to others.'"  *Colvin v. Caruso*, 605 F.3d at 298 (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).  "Nor must they be shared by all members of a religion or be part of any orthodox or official interpretation of church doctrine.  *Id.* (citing *Thomas*, at 715-716.)  Of course, in *Thomas*, 450 U.S. at 715–16, the Supreme Court recognized that "[o]ne can … imagine an asserted claim so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause."   This idea was expounded upon by the court in *Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002):

> A court may also consider whether the litigants' beliefs find any support in the religion to which they subscribe, or whether the litigants are merely relying on a self-serving view of religious practice. This inquiry is not a matter of deciding whether appellants' beliefs accord in every particular with the religious orthodoxy of their church. *See Smith,* 494 U.S. at 887, 110 S.Ct. at 1604 (holding that courts should not question the "validity of particular litigants' interpretations" of their creeds) (citing *Hernandez v. Comm'r,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1989)). Nor is it a matter of adjudicating intrafaith differences in practice or belief. *See Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) (holding that "it is not within the judicial function and judicial competence to inquire whether the petitioner or [another member of his faith] more correctly perceived the commands of their common faith," because "[c]ourts are not arbiters of scriptural interpretation"). Instead, a court may determine whether the litigants' views have any basis whatsoever in the creed or community on which they purport to rest their claim. For example, a Catholic litigant who asserted that it was part of his religion to wear sunglasses would be making a claim "so bizarre ... as not to be entitled to protection" under the First Amendment. *Id.* at 715, 101 S.Ct. at 1431. The litigant's assertion of a view so totally foreign to the creed with which he claimed to affiliate might well lead the court to question his sincerity. It is therefore unlikely that a litigant challenging a rule limiting his right to wear sunglasses could satisfy the threshold requirement.

*Id.* at 1321.

Here, the Court cannot say that Plaintiff's alleged belief that his faith requires kosher meals is "so bizarre…. as to not be entitled to protection." *Thomas,* at 715. Accordingly, the dispositive inquiry is not whether the consumption of kosher food is a component, requirement or mandate of Plaintiff's faith. Rather, the only relevant inquiry is whether Plaintiff sincerely believes that it is. That inquiry "is, of course, a question of fact." *United States v. Seeger*, 380 U.S. 163, 185 (1965). To be sure, the record before the Court on this specific issue could be better. At this juncture, however, Plaintiff cannot be said to have merely rested on his pleadings. Rather, he has submitted statements and documents under penalty of perjury (ECF Nos. 72, 82), which construed in his favor, are sufficient to raise an issue of fact as to the sincerity of his beliefs at the time of the denial at issue here.

Moreover, other evidence in the record, including certain of the documents submitted under penalty of perjury by Plaintiff, raise questions that Defendants have not addressed. For example, on the Response to Request for Religious Accommodation, Chaplain Kehr noted that Plaintiff's requests to purchase scriptures and a yarmulke were appropriate. (ECF No. 60-2, at 8.) Additionally, on that same form, the "Accommodation Review Committee Response" states "Refer to Religious Service Admin. for Approval (kosher meals). (*Id.*) Plaintiff has submitted a copy of ODRC's Religious Accommodations Policy, 72-REG-02, effective date March 12, 2018. (ECF No. 72-1, at 379-385.) That policy provides, in relevant part, "[t]he committee shall forward the Request for Religious Accommodation (DRC4326) along with its recommended Response to Request for Religious Accommodation (DRC4327) to the managing officer/designee for review and approval." Absent a more developed record, however, it is not clear what specific recommendation was forwarded on as required. Further, according to

Plaintiff, Chaplain Kehr forwarded to food service Plaintiff's request to participate in the Fast of

17 Tammuz, a Jewish Holiday, and confirmed that Plaintiff was "on our list as an observer" in

response to Plaintiff's request for a menorah. (ECF No. 72-1, at 14-18.)

In sum, reviewing the record as a whole, an issue of fact exists as to whether, at the time

Defendants denied Plaintiff's kosher meal request in March 2019, Plaintiff's sincerely held

religious beliefs required him to maintain a kosher diet. Resolving this fact-intensive issue as

presented here will come down to credibility. Assessing credibility is a jury matter and,

therefore, a court cannot make credibility determinations on summary judgment. *See Anderson*

*v. Liberty Lobby*, 477 U.S. at 255. While a factfinder may ultimately find that Plaintiff's beliefs

were not sincerely held when his request was denied, that is not the Court's job here.

Accordingly, Defendants are not entitled to summary judgment on this issue. However, the

Court must now consider whether Defendants' actions were reasonable under *Turner v. Safley*,

482 U.S. 78 (1987). *See Santos v. Chambers-Smith*, No. 2:19-cv-2984, 2020 WL 4434866, at *2

(S.D. Ohio August 3, 2020) (Sargus, J.) (recognizing that "most courts, upon finding an issue of

fact as to the sincerity of the inmate's belief, go on to consider whether the prison's action was

nonetheless under *Turner*….")

### 2. *The Turner Balancing Test*

In *Turner,* the United States Supreme Court held that four factors are relevant in

balancing the deference owed to prison policies designed to maintain security and discipline with

the important need to protect inmates' constitutional rights. 482 U.S. 78, 85-89 (1987). The four

factors are as follows:

   (1) whether the regulation has a "valid, rational connection" to a legitimate
       governmental interest;

   (2) whether alternative means are open to inmates to exercise the asserted right;

> (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and

> (4) whether there are "ready alternatives" to the regulation.

*Id.* at 89–91. If the first factor is not present, the regulation is unconstitutional, and the other factors do not matter. *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994). The remaining factors are considerations that must be balanced together. *Spies*, 173 F.3d at 403 (quoting *Turner*, 482 U.S. at 90–91).

"Under the first *Turner* factor, Defendants' motivation matters." *Nixson v. Davis*, No. 2:18-cv-1720, 2020 WL 1929363, at *4 (S.D. Ohio April 21, 2020) (Jolson, J.) Thus, their "conduct was reasonable only if [they] denied Plaintiff's request for a legitimate penological reason." *Id*. Here, Defendant Davis avers by affidavit that "the decision to deny Inmate Turner's request for kosher meals were (sic) based on legitimate budgetary, safety, security, and health concerns." (ECF No. 60-1, at ¶ 11.) This explanation is, at best, conclusory. However, containing costs and maintaining discipline among prisoners have been found to be legitimate penological interests." *See Berryman v. Granholm*, 343 F. App'x 1 (6th Cir. 2009); *Santos*, 2020 WL 4434866, at *3. Defendants argue that their policies are designed to ensure that kosher meals are designated for inmates with a sincere belief. (ECF No. 81, at 11.) Plaintiff does not challenge this policy. Rather, as in *Santos*, Plaintiff's challenge here is fairly characterized as directed to "the *conclusion* pursuant to that policy that his belief was not sincere." *Santos*, 2020 WL 4434866, at *3 (emphasis in original). *See* ECF No. 82, at 2, 3 ("the Defendants refused to allow plaintiff to receive kosher meals, under policy and ODRC Regulation"… "knowingly refused to allow plaintiff to kosher meals" … "Under my First Amindment right to the United States Constitution should allow my free exercise of practicing Judaism and receiving kosher meals as all Jewish

inmates are allowed.") Consistent with the Court's guidance in *Santos* then, the task here "is to determine whether Defendants reasonably (rather than arbitrarily or irrationally) concluded that [Plaintiff's] kosher meal request was not based on a sincere religious belief." *Id.* (citing *Turner*, 482 U.S. at 89-90.)

As set forth above, the Court is unable to make such a determination given the current state of the record. Accordingly, unlike the circumstances in *Santos,* the Court cannot conclude that the first *Turner* factor weighs in favor of Defendants. That is, Defendants have not demonstrated that there was "a rational connection between their conclusion that [Plaintiff's] belief was not sincere and the legitimate governmental interests underlying the ODRC policy that limits kosher meals to inmates who sincerely believe that consuming only such meals is required by their religion." *Id.* at \*4; *see also Horacek v. Burnett*, No. 07-11885, 2008 WL 4427825, at \*8 (E.D. Mich. Aug. 19, 2008), *report and recommendation adopted in part,* No. 07-11885, 2008 WL 4427792 (E.D. Mich. Sept. 30, 2008) (denying summary judgment where the defendant set forth adequate penological justifications for the policy of denying kosher meals to inmates who are not sincere in their beliefs, but failed to explain what purpose is served by denying kosher meals to inmates who are sincere). In short, Defendants' "argument for summary judgment essentially stands or falls on the issue of the sincerity of [] Plaintiff's religious beliefs." *Horacek*, 2008 WL 4427825, at \*8. As discussed above, a genuine issue of material fact exists on that issue, such that a jury could reasonably find in Plaintiff's favor. Summary judgment is therefore not appropriate. Accordingly, the Court need not undertake an analysis of the remaining *Turner* factors.

It is therefore **RECOMMENDED** that summary judgment be **DENIED** on Plaintiff's First Amendment Free Exercise claim.

## C. Qualified Immunity

Defendants also contend that the Court should grant their motion for summary judgment because they are entitled to qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"'Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' " *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To determine whether an officer is entitled to qualified immunity, a court evaluates two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident." *Id.* at 914–15 (citations omitted).

After defining qualified immunity and reciting relevant law in their motion, Defendants do not even refer to the issue before the Court and argue as follows:

> The Sixth Circuit have held that inmates have "no proscriptions placed on his beliefs or the practices of his religion, but is simply deprived of a special time and place to observe his beliefs **exclusively** with others who profess the same faith." *Johnson v. Baker*, 67 F.3d at *4 [published in full-text format at 1995 U.S. App. LEXIS 32117] (emphasis in original). Critically, not only did the prison officials deny *Johnson's* request for separate congregation services, but the Sixth Circuit concluded that the denial of separate congregation services did not burden Johnson's First Amendment right to exercise religion. *Id.* Just as the prison officials in *Johnson*, the Defendants could not have violated a clearly established constitutional right since their denial of

separate congregation services did not burden the Plaintiff's right to exercise his religion.

(ECF No. 81, at 18.)  The discussion in their Reply is slightly better in that it recognizes the alleged constitutional violation at issue here.  (*See, e.g.*, ECF No. 83, at 5 "The record is bereft of evidence to show Plaintiff has a sincerely held belief.")

As noted above, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 328 (6th Cir. 2013) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (citations omitted).  "[Q]ualified immunity for damages in his individual capacity is a mixed question of law and fact. . . . [and a] bare recitation of the legal standard and the elements necessary to meet it is insufficient to trigger review of a mixed question."  *Id*.; *see also Pettry v. City of Parma*, No. 1:14-cv-01667, 2015 WL 5437772, at *2 (N.D. Ohio Sept. 15, 2015) ("Defendants do cite some boilerplate law concerning qualified immunity, but fail to set forth a meaningful analysis of how it applies to the case at bar.").  For these reasons, Defendants have not established that they are entitled to qualified immunity on Plaintiff's claims.

### D.  The Prison Litigation Reform Act

Defendants also argue that the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), "precludes an award of monetary damages for First Amendment claims if the inmate does not suffer a physical injury." (ECF No. 81, at 8.) Subsection (e) of § 1997e provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

Defendants cite case law relying on this provision to bar constitutional claims for money damages by prisoners who have suffered no physical injuries. *See Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-CV-1209, 2014 WL 3459880, at \*10 (S.D. Ohio July 11, 2014), *report and recommendation adopted*, 2014 WL 4181703 (S.D. Ohio Aug. 21, 2014) (citing *Yaacov v. Collins,* No. 09–4148, 2010 U.S.App. LEXIS 27719, at \*10 (6th Cir. Dec. 1, 2010)). However, the Sixth Circuit has spoken definitively on this issue in the time since Defendants' cited cases were decided. In *King v. Zamiara*, the Sixth Circuit held that "deprivations of First Amendment rights are themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries to First Amendment rights." 788 F.3d 207, 212 (6th Cir. 2015). *See also Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (the PLRA does not bar compensatory damages for constitutional violations). Accordingly, Plaintiff's claims for money damages are not barred by the PLRA.

## IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that the Court **GRANT, in part,** Defendants' Motion for Summary Judgment (ECF No. 81) as to Plaintiff's RIULPA claim and **DENY, in part,** Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment Free Exercise claim.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal...." (citation omitted)).

Date:   May 27, 2021              /s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE